**In the Matter of the Application of the UNITED STATES of America for ORDERS AUTHORIZING the INSTALLATION and Use of PEN REGISTERS and Caller Identification Devices on Telephone Numbers [Sealed] and [Sealed]**

**No. MISC. NO. 06–41.**

United States District Court,
D. Maryland.

Feb. 27, 2006.

Paul M. Tiao, Office of U.S. Attorney, Baltimore, MD.

## MEMORANDUM OPINION

BREDAR, United States Magistrate Judge.

On January 27, 2006, in furtherance of a criminal investigation, the government sought an order from this court authorizing the installation and use of pen registers and caller identification devices for a period of 60 days on the cellular telephones of a suspect. The government also requested an order directing the relevant wireless communications service providers to disclose "cell site information concerning the physical location of antenna towers associated with the beginning and termination of calls to and from the subject cellular telephone" and "subscriber and billing information for any numbers dialed and pulsed from and to the subject telephone." The government proffered "specific and articulable facts showing ... reasonable grounds to believe that ... the records or other information sought [would be] relevant and material to an ongoing criminal investigation," 18 U.S.C. 2703(d), but its application did not seek a warrant pursuant to Rule 41, FED. R. CRIM. P., nor was it accompanied by a sworn affidavit establishing probable cause to believe that the information sought would be evidence of a crime. The government did not seek information regarding the content of any communication.

After reviewing the government's application, the court issued the requested order as to the pen registers, caller identification devices, and subscriber and billing information. The court withheld permission to collect cell site information and allowed the government to submit an additional letter in support of its application. On February 3, the government submitted the letter, which has been docketed (Paper No. 5), outlining its position that an order to obtain prospective cell site information can be entered upon less than probable cause pursuant to the combined authority of 18 U.S.C. § 3121 *et seq.* (the "Pen/Trap Statute") and 18 U.S.C. § 2701 *et seq.* (the "Stored Communications Act" or "SCA") provided the government offers "specific and articulable facts showing that there are reasonable grounds to believe that ... the records or other information sought, are relevant and material to an ongoing criminal investigation." (Paper No. 5 at 4, citing 18 U.S.C. § 2703(d).) After review of the government's letter, the court DENIES the government's request because the proffered statutory authority is insufficient. Unless and until Congress takes further action, the court may only authorize disclosure of prospective cell site information upon a showing of probable cause pursuant to Rule 41.[1]

### I.

The questions presented by the government's application are familiar. Less than three months ago, the court decided this same combination of the Pen/Trap Statute and the SCA was insufficient to authorize the disclosure of "real time" cell site information upon a showing of less than probable cause.[2] *See In the Matter of the Appli-*

---

1. Technically, the government could also obtain prospective cell site information pursuant to the Wiretap Statute, 18 U.S.C. § 2518, but this requires more elaborate procedures and an even higher standard of proof than Rule 41.

2. My previous opinion essentially adopted the reasoning of Magistrate Judges Smith and

*cation of the United States for an Order Authorizing the Installation and Use of a Pen Register and a Caller Identification System on Telephone Numbers [Sealed] and the Production of Real Time Cell Site Information,* 402 F.Supp.2d 597 (D.Md. 2005) (*"Maryland Decision"*).[3] In its application in that case, the government sought information from multiple cell sites for the entire period the cell phone was turned on. Through triangulation, the government planned to use the information to pinpoint the cell phone possessor's location, within roughly 300 meters, in real time.

Now the government returns to the court again seeking cell site information, and again claiming authority for its disclosure under the combination of the Pen/Trap Statute and the SCA. The information requested this time is different in three ways from the information sought previously. First, the government now seeks only cell site information concerning the physical location of the antenna towers associated with the beginning and termination of calls to and from the target cell phone. Second, the government now requests only data as to a single cell tower with which the target phone is communicating. The government would not be able to use this information to pinpoint the phone with as much specificity; the information would show, at best, the cell sector in which the phone was located. Third, this time the information would not be transmitted directly from the phone to the government but would be "stored" by the provider. In other words, the government seeks prospective but not real time cell site information.[4]

While the information requested here is less intrusive to privacy than that sought in the previous application, the court's earlier decision was not based on constitutional grounds but on the lack of statutory authority to support the government's request. As such, the government must demonstrate to the court that the differences in the information sought here justify an alternative holding. To be frank, the government's letter makes little effort to

Orenstein, the first two judges to publish opinions on the standard for disclosure of prospective cell site information. *See In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority,* 396 F.Supp.2d 747 (S.D.Tex.2005) (*"Texas Decision"*); *In the Matter of an Application of the United States for an Order (1) Authorizing the Use of a Pen Register and a Trap and Trace Device and (2) Authorizing Release of Subscriber Information and/or Cell Site Information,* 396 F.Supp.2d 294 (E.D.N.Y.2005) (*"EDNY Decision"*).

**3.** The captions of cases concerning cell site information are unwieldy. Therefore I will join other magistrate judges in referring to these cases by the district in which the court sat.

**4.** "Real time" cell site information refers to data used by the government to identify, with varying degrees of accuracy, the location of a phone at the present moment. Real time cell site information is a subset of "prospective"

cell site information, which refers to all cell site information that is generated after the government has received court permission to acquire it. Records stored by the wireless service provider that detail the location of a cell phone in the past (i.e. prior to entry of the court order authorizing government acquisition) are known as "historical" cell site information.

For example, imagine the government receives a court order on a Monday granting access to prospective cell site information (i.e. all cell site information going forward). On Thursday, the government begins tracking the phone in real time; such information is both prospective and real time cell site information. On Friday, the government goes back and accesses the records of the phone's location on Tuesday and Wednesday; such information is prospective but not real time cell site information. *See Maryland Decision,* 402 F.Supp.2d at 599.

distinguish the prior holding and reads more like a motion for reconsideration.[5] The court accepts the invitation to take a fresh look at the government's argument, in light of the recent opinions addressing it.[6]

## II.

Since the court's last decision, the government has refined its argument with the help of a comprehensive opinion by Magistrate Judge Gorenstein, the first judge to grant the government's request for cell site information based on the "hybrid theory." *See SDNY Decision,* 405 F.Supp.2d 435. The government summarizes its position as follows:

> [T]he prospective disclosure of cell-site information falls squarely within the Pen/Trap Statute because cell-site information is "dialing, routing, addressing, or signaling information," and the provisions of that statute mandate a pen/trap order for such disclosure. *See* 18 U.S.C. §§ 3121(a), 3127(3), and 3127(4). The Pen/Trap Statute by itself, however, is insufficient authority for such disclosure, because Congress has forbidden a cellphone company from disclosing cell-site

information "solely pursuant" to a pen/trap order. *See* 47 U.S.C. § 1002(a)(2)(B). The necessary authority for the disclosure of cell-site information called for by the Pen/Trap Statute is provided by Section 2703 of the SCA. In particular, cell-site information falls within the scope of the SCA because it constitutes "record[s] or other information pertaining to a subscriber to or customer of [an electronic communication] service (not including the contents of communications)." *See* 18 U.S.C. § 2703(c)(1). As a result, its disclosure may be obtained pursuant to an "articulable facts" order issued under 18 U.S.C. § 2703(d). Accordingly, the Pen/Trap Statute, together with the SCA, provide authority for the disclosure, on a prospective basis, of cell-site information.

(Paper No. 5 at 3.)

After initial skepticism, *see Maryland Decision,* 402 F.Supp.2d at 603, the court now accepts the government's contention that a mechanism that transmits cell site information to the government falls within the definition of a pen register in 18 U.S.C. § 3127(3). When the Pen/Trap Statute was first enacted in 1986, pen registers and

---

**5.** Indeed, the government continues to argue in other jurisdictions that real time cell site information may be disclosed pursuant to the Pen/Trap Statute and the SCA.

**6.** Since my earlier decision, to my knowledge five courts have issued opinions on cell site information. Three rejected the government's argument. *See In the Matter of the Application of the United States of America for an Order Authorizing the Release of Prospective Cell Site Information,* 407 F.Supp.2d 134 (D.D.C.2006) (*"D.C.Decision"*); *In the Matter of the Application of the United States of America for an Order Authorizing the Disclosure of Prospective Cell Site Information,* No. 06 MISC.004, 2006 WL 243017 (E.D.Wis. Jan.17, 2006) (*"Wisconsin Decision"*); *In the Matter of the Application of the United States of America for an Order Authorizing the Installation and Use of a Pen Register and/or Trap*

*and Trace Device for Mobile Identification Number (585) 111–1111 and the Disclosure of Subscriber and Activity Information under 18 U.S.C. § 2703,* No. 06–MJ–506, 2006 WL 354289 (W.D.N.Y. Feb.15, 2006) (*"WDNY Decision"*). Two courts accepted the argument and authorized disclosure of cell site information. *See In re Application of the United States of America for an Order for Disclosure of Telecommunications Records and Authorizing the Use of a Pen Register and Trap and Trace,* 405 F.Supp.2d 435 (S.D.N.Y.2005) (*"SDNY Decision"*); *In the Matter of the Application of the United States for an Order: (1) Authorizing the Installation and Use of a Pen Register and Trap and Trace Device; and (2) Authorizing Release of Subscriber Information and/or Cell Site Information,* 411 F.Supp.2d 678 (W.D.La.2006) (*"Louisiana Decision"*).

trap and trace devices were given narrow definitions limited to the capture of telephone numbers. The USA Patriot Act of 2001 broadened these definitions significantly. A "pen register" now means a "device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" now means a "device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4). Cell site information is "signaling information" as discussed by these statutes. *See United States Telecom Ass'n v. FCC*, 227 F.3d 450, 463–64 (D.C.Cir. 2000) ("[A] mobile phone sends signals to the nearest cell site at the start and end of a call. These signals, which are necessary to achieve communications between the caller and the party he or she is calling, clearly are 'signaling information.' ") (internal quotations omitted).

The government may not seek cell site information pursuant to the Pen/Trap Statute alone, however, because Section 103(a)(2) of the Communications Assistance for Law Enforcement Act ("CALEA"), P.L. 103–313, 108 Sta. 4279 (1994), explicitly forbids service providers from disclosing "any information that may disclose the physical location of the subscriber" when the government proceeds "solely pursuant to the authority for pen registers and trap and trace devices." 47 U.S.C. § 1002(a)(2). The government's argument hinges on the use of the word "solely" in § 103(a)(2). According to the government, the fact that Congress included this word means Congress intended to allow for the possibility of combining the Pen/Trap Stat-

ute with another statute to authorize disclosure of cell site information on a prospective basis. In other words, § 103(a)(2) affirmatively authorizes access to information disclosing the physical location of the subscriber so long as the government does not act "solely pursuant" to the Pen/Trap Statute. To quote Magistrate Judge Facciola, "this conclusion, besides being historically inaccurate, reaches an utterly counter-intuitive conclusion." *D.C. Decision*, 407 F.Supp.2d at 140.

The legislative history of § 103(a)(2) shows that Congress did not intend to allow for disclosure of cell site information through use of the Pen/Trap statute. Other opinions describe this history and its implications in detail, and it need not be recounted here. *See, e.g., Wisconsin Decision*, 412 F.Supp.2d 947, 954–57; *D.C. Decision*, 407 F.Supp.2d at 137–40. In short, the language in § 103(a)(2) was predicated on former FBI Director Louis J. Freeh's assertion to Congress that pen register and trap and trace devices were not to be, and would not be, used to acquire cell site information. *See Wisconsin Decision*, at 957. As such, the report on CALEA by the House Judiciary Committee stated that the bill: "[e]xpressly provides that the authority for pen registers and trap and trace devices *cannot be used to obtain tracking or location information*, other than that which can be determined from the phone number." H.R.Rep. No. 103–827(I), at 17 (1994) (emphasis added). Faced with such evidence of Congressional intent, the court pauses before concluding, based on the single word "solely," that Congress intended § 103(a)(2) to affirmatively authorize disclosure of cell site information on a prospective basis through any combination involving the Pen/Trap Statute. An equally valid interpretation of the "solely" phrase is that Congress intended that authority to locate subscribers should

derive largely, if not wholly, elsewhere. At best, Congress was discouraging, not encouraging, reliance on the Pen/Trap Statute for this purpose.

Furthermore, and of more immediate relevance, even if the court concluded Congress intended the Pen/Trap Statute to authorize disclosure of cell site information when combined with other authority, that authority is *not* the SCA. First, the SCA simply is not and never was intended to be a statute that authorizes prospective surveillance. The structure of the SCA shows that the statute does not contemplate orders for prospective information. *See Texas Decision*, 396 F.Supp.2d at 760.[7] Second, § 103(a)(2) of CALEA was predicated on Director Freeh's assertion that the SCA and Pen/Trap Statute were distinct. *See Wisconsin Decision*, at 957 ("Simply stated, in his remarks, Director Freeh assured Congress that the legislation about which he was testifying and urging Congress to pass had nothing to do with, and did not relate to, the SCA."). Subsequent amendments of the Pen/Trap Statute may have broadened the definition of these devices, but those amendments did not alter the critical language of CALEA and, most importantly, they did not amend the SCA nor convert the SCA into a prospective surveillance statute.

Thus, upon review, the court remains convinced that cell site information cannot be obtained on a prospective basis through a combination of the Pen/Trap Statute and the SCA. The information now requested does not escape this holding by virtue of its less intrusive nature. First, the fact that the information will not be transmitted to the government in real time is irrelevant to the government's statutory rationale. *See Maryland Decision*, 402 F.Supp.2d at 605 n. 11 ("[t]he authority proffered by the government appears insufficient to allow disclosure of *any* prospective cell site information"). The legislative history shows that this combination of statutes was not intended to authorize any disclosure of cell site information on a prospective basis. Moreover, if the court were to issue an order, no safeguards exist to prevent the government from accessing the information in real time. Further, the government does not detail how long the requested information will be "stored" by the provider before transmission. If transmission is instantaneous, there is essentially no difference between the requested information and real time cell site information.

Second, the fact that the requested information reveals less precise location information does not change the statutory analysis. The government is wrong to suggest that "all of the arguments in the EDNY and Texas Decisions rely on the argument that the prospective disclosure of cell-site information converts cellphones into 'tracking devices.'" (Paper No. 5 at 20 n. 5.) In fact, the major thrust of those opinions and this court's analysis (as well as the most recent decisions) is that the structure and legislative history of the Pen/Trap Statute and SCA indicate they were not intended to authorize the disclosure of prospective cell site information.[8]

---

7. The SCA regulates access to records and communications in storage and therefore lacks provisions typical of prospective surveillance statutes. The SCA imposes no limit on the duration of the government's access, no provision for renewal of the court order, no requirement for periodic reports to the court by the government, and no automatic sealing of court records. In contrast, all of these provisions appear in statutes governing prospective surveillance like wiretap and pen/trap orders.

8. The textual argument put forth by Judge Smith and discussed in my previous decision, *see Texas Decision*, 396 F.Supp.2d at 758–59,

Whether disclosure of the less-precise location information requested here would convert a cell phone into a tracking device is of little import.[9]

In granting the government's request for the type of information sought here, Judge Gorenstein made clear that his holding did not apply to the more precise, real time data requested in the *Texas, EDNY,* and *Maryland Decisions. SDNY Decision,* 405 F.Supp.2d at 450. This is one area of the law, however, where the slippery slope is real, and the government clearly believes that Judge Gorenstein's reasoning can be applied to authorize requests for more intrusive information. In a hearing before Magistrate Judge Feldman, the government all but conceded that its hybrid theory does not rely on any of the differences between precise real time information and prospective, more general location information:

> Q: (by the Court): The reason I'm pressing you on this is the whole point of your hybrid analysis would apply with equal force to triangulation information. You may not be wanting to exercise that, but you're telling me that even though we collect triangulation information under the pen statute and even though 2703 allows us to pair it with the pen register statute, we're not going to go and get that extra information? Why? If your argument makes sense, why doesn't it make sense for all the information you can collect?

A: (AUSA Littlefield): Well there's a couple of practical things going on. One, we're before magistrate judges that are the gatekeepers—we're trying to convince them that the government isn't being some ruthless, overbearing entity—we're trying to be reasonable. So, therefore, if we can get the magistrate's ear and we don't have to fight this fight a zillion times, we'll back off. If you have this internal radar that's going on "privacy interest, privacy interest", okay, we'll back off. But is it possible the argument could be made that we could be here on another day having gotten floor one and now we're trying to get floor two? Yes. Has that been suggested by anyone? Absolutely not.

*WDNY Decision,* 2006 WL 354289, at *8 n. 5. Despite the AUSA's assertion that no one has suggested using "floor one" to get to "floor two," the government has already tried to do just that. The government cited the reasoning in the *SDNY Decision* in its application to the D.C. District Court for more precise, real time cell site information. *D.C. Decision,* 407 F.Supp.2d at 136–37.

The bottom line is that the hybrid theory accepted by Judge Gorenstein and advocated by the government leaves the court with authority that is at best murky and, at worst, illusory. Where prospective surveillance of a person's location is concerned, the court cannot base an order on

---

*Maryland Decision,* 402 F.Supp.2d at 602, does rely on the argument that the prospective disclosure of cell site information converts cell phones into tracking devices, but this argument was one of several and has not been relied upon by more recent decisions denying the government's request.

**9.** Further, I am not convinced by the government's argument that the information requested here does not convert a cell phone into a tracking device. The definition of

"tracking device" is broad and contains no articulation of how precise a device must be. *See* 18 U.S.C. § 3117(b). The government's application explicitly states that the government wants a prospective order for cell site information so it can determine where the cell phone possessor conducts his illegal activities. In other words, the government only wants this information so it can track the suspect's movement via his cell phones.

such shaky authority. Only Congress may authorize courts to order disclosure of prospective cell site information on a showing of less than probable cause, and it is not clear that Congress has done so.[10]

Finding the statutes proffered by the government insufficient to authorize the court to issue an order authorizing disclosure of prospective cell site information, the court again is left with only the general authority to issue a Rule 41 warrant upon a showing of probable cause to believe that the data sought will yield evidence of a crime.[11] *See* FED. R. CRIM. P. 41. To date the government has not applied for a warrant for prospective cell site information in this case—should a proper Rule 41 application be presented it will be taken up forthwith.

---

**10.** Of course, to the extent any new statute authorizing disclosure of prospective cell site information permitted warrantless tracking of a cell phone possessor in a private residence not open to visual surveillance, the court would need to assess its constitutionality under *United States v. Karo,* 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984). *See Maryland Decision,* 402 F.Supp.2d at 605 n. 12.

**11.** The government does not believe Rule 41 is an appropriate mechanism to obtain prospective cell site information; a fundamental premise of its hybrid theory is that the Patriot Act made the Pen/Trap Statute the exclusive means for obtaining cell site information. *See* 18 U.S.C. § 3121(a) ("Except as provided in this section, no person may install or use a pen register or a trap and trace device without first obtaining a court order under [the Pen/Trap Statute]."). The court cannot accept that Congress, by simply changing the definitions of "pen register" and "trap and trace device" in the Pen/Trap Statute in 2001, intended for prospective cell site information to be available under the lesser standard of the SCA but not under the higher standard of a traditional Rule 41 warrant. The government's contention leads to an absurd result and runs contrary to the history and tradition of how evidence of crime is collected in this country.