In the Matter of the **APPLICATION OF the UNITED STATES of America for an ORDER AUTHORIZING the INSTALLATION AND USE OF a PEN REGISTER DEVICE, a Trap and Trace Device, and for Geographic Location Information.**

**Misc No. 07–28 FAB/BJM.**

United States District Court, D. Puerto Rico.

July 18, 2007.

## OPINION AND ORDER

BRUCE J. McGIVERIN, United States Magistrate Judge.

### I. Introduction and Background

The government has filed sealed applications requesting orders under 18 U.S.C. §§ 2703 and 3122, directed at two cellular telephone service providers, for the installation and use of pen register and trap and trace devices, Enhanced Caller ID special calling features, and the capture of limited geographic or cell site information, all for a period of sixty days from the date of the order. (Docket No. 37, 39). The court has issued sealed orders granting the government's applications as to all requests except the requests to obtain limited geographic and cell site information, which was denied without prejudice for the government to resubmit its application with a showing of probable cause pursuant to Fed.R.Crim.P. 41. (Docket No. 38, 40). I am writing this opinion to explain my reasoning in denying the government's request for limited geographic and cell site information upon a showing of less than probable cause, since similar applications have been presented before in this district and likely will be presented again. The opinion will not be filed under seal because its reasoning does not hinge on any details regarding the specific cell phones at issue or on the government's underlying criminal investigation, and such details need not and will not be disclosed. *See In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority,* 396 F.Supp.2d 747, 748–49 (S.D.Tex.2005) (*"S.D.Tex I"*).

### A. Cell Phone Technology

By way of necessary background, cellular telephone networks function by transmitting and receiving signals to and from towers placed in geographic coverage areas, or "cells." As a cell phone and its user move from place to place, the cell phone's signal is sent automatically to the tower that provides the best reception. The signal continues to be sent at all times while the cell phone is turned on even if a call is not taking place. Cellular telephone companies typically have the technical means to keep track of and store the cell phone tower that is receiving the signal of a cell phone at any given point in time. *See In the Matter of the Application of the United States of America for an Order*

*Authorizing the Disclosure of Prospective Cell Site Information,* 412 F.Supp.2d 947, 949–50 (E.D.Wis.2006) (*"E.D.Wisc.I"*). Moreover, by a process of triangulation from various cell towers, it is possible to track the movements of a target cell phone and thereby pinpoint the location of a person using that phone. *See S.D.Tex. I,* 396 F.Supp.2d at 751.[1]

## B. *The Government's Applications*

In the present case, the government self-imposed certain limitations on the type of geographic information that it wants the cell phone service providers to disclose. In particular, the government's requests were limited to: (1) information regarding cell site location that consists of the tower receiving transmissions from the target phone; (2) tower information tied to a particular call made or received by the cell phone user; (3) information transmitted from the cell phone service provider to the government; and (4) information from the origin and termination of calls and, if reasonably available, during the progress of a call that is not initiated by the government itself. The government's requests specifically did not seek disclosure of: (1) any cell site information that might be available when the user's cell phone was turned on but a call was not in progress; (2) information that would allow the government to triangulate multiple tower locations and thereby pinpoint the location of the user; and (3) GPS information on the location of the user, even if that technology is built into the user's cell phone. (Docket No. 37, 39). Importantly, the government's requests for cell site information are prospective in nature—that is, the application seeks capture and disclosure of "geographic location information ... for a

period not to exceed sixty (60) days from the date of this Court's order." (Docket No. 37, 39, p. 3).

## C. *Prior Decisions*

To date, no circuit court of appeals has addressed whether a district court may order a cell phone service provider to disclose to the government "prospective" cell site information upon a showing of less than probable cause. However, several district courts have addressed—and are divided over—the issue. Fortunately, magistrate and district judges on both sides of the issue have written comprehensive and well-articulated opinions.

Decisions granting requests for limited prospective cell site information include: *In re Application for an Order Authorizing the Extension and Use of a Pen Register Device,* 2007 WL 397129 (E.D.Cal. Feb.1, 2007); *In re Application of the United States for an Order for Prospective Cell Site Location Information,* 460 F.Supp.2d 448 (S.D.N.Y.2006) (*"S.D.N.Y.II"*); *In the Matter of the Application of the United States of America,* 433 F.Supp.2d 804 (S.D.Tex.2006) (*"S.D.Tex.II"*); and *In re Application for Disclosure of Telecommunications Records,* 405 F.Supp.2d 435 (S.D.N.Y.2005) (*"S.D.N.Y.I"*).

Decisions denying the government's requests (although sometimes for different reasons) are at this point the majority and include: *In the Matter of the Application of United States of America for an Order Authorizing the Disclosure of Prospective Cell Site Information,* 2006 WL 2871743 (E.D.Wis. Oct. 6, 2006) (*"E.D.Wisc.II"*), affirming decision of magistrate judge reported at E.D.Wisc. I, supra; *In the Matter of the Application of the United States*

---

**1.** A more detailed explanation of cellular telephone technology may be found at *S.D.Tex. I,*

396 F.Supp.2d at 750–51.

*of America*, 441 F.Supp.2d 816, 827–37 (S.D.Tex.2006) *("S.D.Tex.III"); In Matter of Application for an Order Authorizing the Installation and Use of a Pen Register and Directing the Disclosure of Telecommunications Records*, 439 F.Supp.2d 456 (D.Md.2006) *("D.Md.II"); In the Matter of the Application of the United States of America*, 2006 WL 1876847 (N.D.Ind. July 5, 2006) *("N.D.Ind.II"); In the Matter of the Application of the United States of America*, 416 F.Supp.2d 390 (D.Md.2006) *("D.Md.I"); In the Matter of the Application of the United States of America*, 415 F.Supp.2d 211 (W.D.N.Y.2006) *("W.D.N.Y."); In the Matter of the Application of the United States of America for an Order Authorizing the Release of Prospective Cell Site Information*, 407 F.Supp.2d 134, 134–35 (D.D.C.2006) *("D.D.C.II"); In re the Applications of the U.S. for Orders Authorizing the Disclosure of Cell Cite Information*, 2005 WL 3658531 (D.D.C. Oct. 26, 2005) *("D.D.C.I"*); and *In re an Application of U.S.A. for an Order (1) Authorizing the use of a Pen Register and a Trap and Trace Device and (2) Authorizing Release of Subscriber Information and/or Cell Site Information*, 384 F.Supp.2d 562, *and on reconsideration*, 396 F.Supp.2d 294 (E.D.N.Y.2005); *see also, S.D.Tex I, supra*.[2]

## D. *Possible Basis of Authority*

I note at the outset, as did Judge Aldeman in her opinion on this topic, that I do

---

**2.** Magistrate Judge Smith's opinion in *S.D.Tex. I* addressed a request by the government for cell site information that did not contain the limitations applicable to the requests in the present case and in the other cases cited above. However, Magistrate Judge Smith's opinion in *S.D.Tex. III*, which does address a request for limited cell site information, concluded that the limitations imposed on the request did not change the statutory analysis employed in *S.D.Tex.I*, nor did the limitations alter his conclusion that

not question *whether* the government can obtain cell cite information; "[r]ather, the issue is the *standard* it must meet before a court will authorize such disclosure," and the basis for the authority. *E.D.Wisc. II*, 2006 WL 2871743 at *1. The three possible standards (listed from the most demanding on the government to the least demanding), and their possible basis of authority, are: (1) the government may obtain a warrant for disclosure of the information pursuant to Fed.R.Crim.P. 41 upon a showing, through sworn affidavit, that there is *probable cause to believe that what is to be seized is evidence of a crime*; (2) the government may obtain a court order pursuant to Sections 2703(c) and (d) of the Stored Communications Act, 18 U.S.C. 2701–2712 ("SCA"), upon a showing of *specific and articulable facts that the information sought is relevant to and material to an ongoing criminal investigation*; and (3) the government may obtain a pen register pursuant to Section 3122(a)(2) of the Pen Register and Trap and Trace Statute, 18 U.S.C. §§ 3121–3127 ("Pen Register Statute"), upon the *certification that the information sought to be captured by the device is relevant to a criminal investigation. See D.D.C. II*, 407 F.Supp.2d at 34–35.

## E. *The Government's Theory: "Hybrid" or "Dual" Statutory Authority*

In the present case, the government's application does not seek a warrant pursu-

---

the court lacks a statutory basis to authorize disclosure of any cell site information on a finding of less than probable cause. See *S.D.Tex. III*, 441 F.Supp.2d at 827, 836–37. Judge Kaplan, who authored one of the decisions granting the government's request for limited cell site information, agrees that the "arguments for statutory authorization ... apply equally whether information is obtained from one antenna tower at a time or from many simultaneously." *S.D.N.Y. II.*, 460 F.Supp.2d at 452.

ant to Fed.R.Crim.P. 41, nor does it contain a sworn affidavit attesting to facts sufficient to establish probable cause. Instead, the government's applications cite as authority Section 2073 of the SCA and Section 3122 of the Pen Register Statute, and contain declarations under penalty of perjury by an assistant United States Attorney that there are "specific and articulate facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation" (the standard applicable under the SCA) and that the information sought is "relevant to an ongoing criminal investigation" (the standard applicable under the Pen Register Statute). In short, the government bases its requests on an amalgamation of the authority provided by both the Pen Register Statute and the SCA, a theory that has come to be known in the case law as the "hybrid" or "dual" theory of statutory authority for disclosure of cell site information. *See, e.g., S.D.Tex. III*, 441 F.Supp.2d at 827–28. It also should be noted that, although nowhere mentioned in the government's applications in the present case, the government in other cases in which it has advanced the hybrid theory has also relied on a third statute— Section 1002 of the Communications Assistance for Law Enforcement Act of 1994 ("CALEA"), 47 U.S.C. § 1002—to act as a bridge linking the Pen Register Statute and the SCA.

Judge Kaplan, in his opinion granting disclosure of cell site information, succinctly summarized the government's hybrid theory of interplay between the three statutes:

The government makes a three part argument in support of its application. First, it asserts that the Pen Register Statute permits courts to order the installation of pen registers and trap and trace devices that, in addition to report-ing the telephone numbers of incoming and outgoing calls made from a particular cell phone, would disclose also the cell site information for the beginning and end of each call. It acknowledges that the Communications Assistance for Law Enforcement Act of 1994 ("CALEA") requires that courts rely also on some additional statutory authority when ordering the disclosure of prospective cell site information under the Pen Register Statute. Finally, it contends that the Stored Communications Act provides the additional authority required by CALEA.

*S.D.N.Y. II*, 460 F.Supp.2d at 454 (footnote omitted).

Two of the three statutes that underlie the hybrid theory—the Pen Register Statute and the SCA—were originally enacted in 1986 as part of the Electronic Communications Privacy Act ("ECPA"), Pub.L. No. 99–508, 100 Stat. 1848 (1986), a then-comprehensive statute fixing the contours of electronic surveillance. Also included in ECPA, and relevant to the present issue, as will be discussed *infra*, was a provision concerning mobile tracking devices. *See* 18 U.S.C. § 3117. CALEA, the third statute on which the hybrid theory relies, was enacted in 1994.

Implicit in the government's hybrid theory of statutory authority is the acknowledgment that neither the Pen Register Statute nor the SCA standing alone authorizes disclosure to the government of cell site information. The Pen Register Statute cannot by itself provide authority because CALEA specifically provides that "information acquired solely pursuant to the authority for pen registers and trap and trace devices ... shall not include any information that may disclose the physical location of the subscriber." 47 U.S.C. § 1002(a)(2). The SCA cannot by itself

provide full authority because it lacks the procedural safeguards (such as time limits and provisions for sealing, renewal, and periodic reports) typical of prospective surveillance statutes. Thus, even proponents of the hybrid theory concede that the SCA must borrow these provisions from the Pen Register Statute. *See S.D.N.Y. II*, 460 F.Supp.2d at 459–60.

## II. *ANALYSIS*

With this background in mind, the court must examine in some detail the three statutes involved to determine whether they in fact may be combined to provide the statutory authority to support the government's applications. As discussed further below, I agree with the government's position on the first two steps of its argument, but part company with the government at step three.

### A. Step One: The Pen Register Statute

■ As mentioned above, the Pen Register Statute was enacted in 1986 as part of the ECPA. The Pen Register Statute provides, with certain exceptions not relevant here, that "no person may install or use a pen register or a trap and trace device without first obtaining a court order under section 3123 of this title." 18 U.S.C. § 3121(a). The Pen Register Statute authorizes the court to issue an order permitting installation and use of these devices upon an *ex parte* application by the government certifying that "information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation." 18 U.S.C. § 3123(a)(1).

Upon enactment, Section 3127(3) narrowly defined "pen register" as a device to record or decode the identity of numbers dialed or transmitted from a telephone. In 2001, the USA PATRIOT Act expanded the definition of pen register to include any "device or process which records or decodes dialing, routing, addressing, or *signaling information* transmitted by an instrument or facility from which a wire or electronic communication is transmitted, provided, however, that such information shall not include the contents of any communication." 18 U.S.C. § 3127(3) (emphasis supplied). Section 3127(4) contains a similar definition and limitation for "trap and trace" devices that capture data of incoming calls. 18 U.S.C. § 3127(4).

Most, but not all, of the courts that have examined the question agree that the term "signaling information" under 18 U.S.C. § 3127(3) and (4) encompasses cell site information, which therefore may be disclosed pursuant to an order for a pen register and/or trap and trace device absent countervailing statutory authority. *See, e.g., S.D.N.Y. II*, 460 F.Supp.2d at 455; *E.D.Wisc. I*, 412 F.Supp.2d at 953; *but see, S.D.Tex. I*, 396 F.Supp.2d at 761 (concluding, based on legislative history, that the 2001 amendments to the definitions in Section 3127 were intended to reach only electronic communications such as email). I concur with what appears to be the majority of decisions that agree with this much of the government's argument. As discussed above, cellular telephones function through the transmission of signals between the units and cell phone towers, and these transmissions quite properly may be considered "signaling information" within the plain language of the Pen Register Statute as expanded in 2001 by the USA PATRIOT Act. Thus, this data would be obtainable through an order for a pen register absent any contrary statutory directive.

### B. Step Two: CALEA

The next step in the government's hybrid theory rests on CALEA, which Congress passed in 1994 in order to "preserve

the government's ability, pursuant to court order or other lawful authorization, to intercept communications involving advanced technologies such as digital or wireless transmission modes ... while protecting the privacy of communications and without impeding the introduction of new technologies, features, and services." H.R.Rep. No. 103–827(I), at 9 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3489. To this end, Section 1002(a)(2) requires telecommunications carriers to ensure that their equipment is capable of "expeditiously isolating and enabling the government, pursuant to a court order or other lawful authorization, to access call-identifying information that is reasonably available to the carrier ... except that, with regard to information acquired *solely pursuant to the authority for pen registers and trap and trace devices ..., such call-identifying information shall not include any information that may disclose the physical location of the subscriber* (except to the extent that the location may be determined from the telephone number)." 47 U.S.C. § 1002(a)(2) (emphasis added).

The reported decisions have divided sharply over whether, in adopting Section 1002(a)(2), Congress intended flatly to prohibit the use of the Pen Register Statute as a mechanism for the government to obtain cell site information, or, rather, intended the Pen Register Statute to be used in combination with some other source of authority as a basis for such disclosure.

The courts agreeing with the government's hybrid theory generally concede that cell site information may disclose the "physical location of the subscriber" and therefore may not be disclosed pursuant to the Pen Register Statute by itself. However, the government, and the courts adopting its hybrid theory, contend that the phrase "solely pursuant" necessarily

directs that the Pen Register Statute may be used in combination with some other unnamed authority for release of information that may disclose physical location. In support of this view, Judge Gorenstein observed that: " '[s]olely' means 'without another' or 'to the exclusion of all else' *See Merriam–Webster's Collegiate Dictionary* (10th Ed.2000), at 1114. If we are told that an act is not done 'solely' pursuant to some authority, it can only mean that the act is done pursuant to that authority 'with [ ] another' authority. *Id.* As a result, the use of the word 'solely' in section 1002 necessarily implies that 'another' mechanism may be combined—albeit in some unspecified way—with the Pen Register Statute to authorize disclosure of cell site information." *S.D.N.Y. I,* 405 F.Supp.2d at 442. As I have already mentioned, and will discuss further below, proponents of the hybrid theory contend that the other "mechanism" is the SCA.

Judge Gorenstein's analysis, however, is strikingly at odds with CALEA's legislative history. Initially, since the definition of pen register as it stood in 1994 when CALEA was enacted only contemplated obtaining phone numbers and did not include "signaling data," it is problematic, at best, to conclude that by passing CALEA in 1994 Congress intended the Pen Register Statute to be used, even in combination with some other authority, to obtain location information. Moreover, both the House and Senate reports indicate that the language of CALEA was intended to prohibit—not allow—the disclosure of location information. In particular, those reports stated that the respective bills that became CALEA "[e]xpressly provide[ ] that the authority under pen register and trap and trace orders cannot be used to obtain tracking or location information, other than that which can be determined from the phone number." S.Rep. No. 103–402, at 18 (1994), *available at* 1994 WL 562252;

H. Rep. No. 103–827(I), at 17 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3489, 3497. Both reports further assert that "[c]all identifying information obtained pursuant to pen register and trap and trace orders may not include information disclosing the physical location of the subscriber sending or receiving the message, except to the extent that location is indicated by the phone number." S.Rep. No. 103–402, at 22; H. Rep. No. 103–827(I), at 22.

Opponents of the government's hybrid theory also point to the testimony of then-FBI Director Louis Freeh before the House and Senate in relation to CALEA, addressing Congress's concern that legislation requiring telecommunications carriers to provide what the Director referred to as "call set up information" would permit the tracking of persons. In his testimony, Mr. Freeh stated that "call set up information" was not to include "any information that may disclose the physical location of a mobile facility or service beyond that associated with the number's area code or exchange." *E.D.Wisc.I*, 412 F.Supp.2d at 956. In the end, even those decisions adopting the hybrid theory concede that CALEA's "legislative history seems to support this [opposing] view." *S.D.N.Y. II*, 460 F.Supp.2d at 457.

■ Compelling as the legislative history may be, it can carry the day only when the face of the statute is unclear. *Ratzlaf v. United States*, 510 U.S. 135, 147–48, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994). Here, no such unclarity exists on the face of the statute. In particular, I do not see how the phrase "solely pursuant" in Section 1002(a)(2) can be read so as *not* to convey the meaning that the Pen Register Statute may be used in combination with some other authority for the purpose the government seeks. As Judge Kaplan pointed out, such an interpretation "requires reading the word 'solely' out of the statute

entirely, which would violate 'the settled rule that the Court must, if possible, construe a statute to give every word some operative effect.'" *S.D.N.Y. II*, 460 F.Supp.2d at 458, *quoting Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 158, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004). Thus, I can only conclude, albeit uncomfortably given legislative history that appears to clash directly with the plain language of the statute, that Section 1002(a)(2) allows cell site information to be disclosed pursuant to the Pen Register Statute combined with some other source of authority.

### C. Step Three: The Stored Communications Act (SCA)

The hybrid theory posits that the SCA may be combined with the Pen Register Statute to provide the required authority. Proponents of the theory look to Section 2703(c) of the SCA, which states, in pertinent part, that "a governmental entity may require a provider of *electronic communication service* ... to disclose a *record or other information* pertaining to a subscriber to or customer of such service (not including the contents of communications)" by, among other means, obtaining a court order pursuant to Section 2703(d). 18 U.S.C. § 2703(c) (emphasis supplied). Section 2703(d), in turn, provides that any court of competent jurisdiction may issue such an order provided that the government "offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). The government contends that cell phone companies are providers of an "electronic communications service" and that cell site data constitutes a "record or other infor-

mation" under Section 2703(c) that may be obtained pursuant to an order granted under Section 2703(d) in combination with the Pen Register Statute.

As other courts have pointed out, there are several problems with the government's argument. Initially, the SCA, as its title announces, contemplates orders for *stored* rather than prospective information: the "SCA regulates access to records and communications in storage and therefore lacks provisions typical of prospective surveillance statutes. The SCA imposes no limit on the duration of the government's access, no provision for renewal of the court order, no requirement for periodic reports to the court by the government, and no automatic sealing of court records. In contrast, all of these provisions appear in statutes governing prospective surveillance like wiretap and pen/trap orders." *D.Md. I,* 416 F.Supp.2d at 395, f.n. 7. Congress's decision not to include in the SCA any provisions typical of prospective surveillance statutes indicates its intent that the SCA be used for the disclosure of historic and not prospective data. Accordingly, the SCA cannot, at least by itself, support the government's applications in this case, which seek cell site information prospectively up to sixty days from the date of the requested order. *Id.*[3]

While the SCA does not contain the procedural safeguards of an ongoing surveillance statute, it has been suggested that those provisions could be borrowed from the Pen Register Statute. *See*

*S.D.N.Y. II,* 460 F.Supp.2d at 459–60; *S.D.N.Y. I,* 405 F.Supp.2d at 448. The problem with this argument is that the SCA specifically lists the legal mechanisms under which cell phone subscriber information may be obtained, and those mechanisms do not include the Pen Register Statute. In particular, Section 2702(a) expressly prohibits, except as provided in subsections (b) and (c), a phone company from disclosing any "record or other information pertaining to a subscriber to or customer of such service . . . to any governmental entity." 18 U.S.C. § 2702(a)(3). The only exception to this prohibition in subsections (b) and (c) that is conceivably applicable is the directive in subsection (c)(1) that records or other information may be disclosed "as otherwise authorized in section 2703." 18 U.S.C. § 2702(c)(1). Section 2703, for its part, lists five specific circumstances under which a governmental entity may require disclosure of records or other information pertaining to a customer of an electronic communications service, yet this list does not include obtaining a pen register or trap and trace order. 18 U.S.C. § 2703(c).[4] In short, the argument to supplement the SCA with the procedural safeguards of the Pen Register Statute to obtain customer records and information fails because the SCA contains a specific prohibition against disclosure of customer records to the government, and the carefully tailored exceptions to this prohibition do not include pen register and trap and trace orders.

---

3. As one commentator noted, the fact that there may be momentary storage of cell site data before disclosure to the government does not address the SCA's lack of procedural safeguards. "What should matter is that the government's application seeks information not yet in existence at the time an order would be signed." M. Wesley Clark, *Cell Phones as Tracking Devices,* 41 Val. U.L.Rev. 1413, 1453, fn. 214 (2007).

4. The five circumstances are: obtaining a warrant under the Federal Rules of Criminal Procedure or equivalent State warrant; obtaining a court order under subsection (d); the consent of the customer; requests relevant to investigations of telemarketing fraud; and requests for name, address and other records clearly not related to cell site information. 18 U.S.C. § 2703(c)(A)—(E).

There is another reason the SCA cannot be used as authority for disclosure of cell site information: the SCA's trail of definitions leads, inescapably in my judgment, to the conclusion that the discloseable information under the statute does not include location information. As indicated above, the provisions of the SCA apply to providers of an *"electronic communications service,"* and the "information" that may be obtained must pertain to the customer of such "service." "Electronic communications service" is defined as "any service which provides to users thereof the ability to send or receive *wire or electronic communications."* 18 U.S.C. § 2510(15) (emphasis supplied).[5] Thus, in order for Section 2703(c) to apply, the information requested must pertain to "wire or electronic communications."

Those terms, however, cannot be read to encompass cell phone location data. First, "wire communication" is defined as "any aural transfer" which in turn is defined as "a transfer containing the human voice at any point between and including the point of origin and point of reception." 18 U.S.C. §§ 2510(1), (18). "Cell site data is not a wire communication under this definition because it does not involve the transfer of the human voice at any point along the path between the cell phone and the cell tower." *S.D. Tex. I,* 396 F.Supp.2d at 759, *citing United States v. Forest,* 355 F.3d 942, 949 (6th Cir.2004) ("Cell site data clearly does not fall within the definitions of wire or oral communication").

Nor can cell site data be considered an "electronic communication." EPCA defines that term as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce, *but does not include ... any communication from a tracking device (as defined in section 3117 of this title)."* 18 U.S.C. § 2510(12) (emphasis supplied). The term "tracking device" is defined in EPCA as "an electronic or mechanical device which permits the tracking of the movement of a person or object." 18 U.S.C. § 3117(b). As several courts have noted, this definition is "striking for its breadth" and covers a device "even though it may not have been intended or designed to track movement; it is enough if the device merely 'permits' tracking. Nor does the definition suggest that a covered device can have no function other than tracking movement. Finally, there is no specification of how precise the tracking must be." *S.D.Tex. I,* 396 F.Supp.2d at 753; *see also E.D.Wisc. II,* 2006 WL 2871743 at *5 (location monitoring converts cell phone into tracking device; therefore, cell site information does not constitute "electronic communication" under the SCA); M. Wesley Clark, *Cell Phones as Tracking Devices,* 41 Val. U.L.Rev. 1413, 1473 (2007) ("It would appear clear that on the statute's [18 U.S.C. § 3117] face, a cell phone easily fits within the term 'tracking device' and that this language is more direct and particularized than the more generalized language found in the Pen/Trap Statute and in the SCA, the latter two provisions being laws which others contend relate also to tracking devices or processes."). I agree with the authority cited above that when a cell phone is used to determine a person's location, it falls within the meaning of a tracking device under the plain

---

**5.** Section 2711(1) of the SCA incorporates the definitions found elsewhere in EPCA, particularly 18 U.S.C. § 2510.

language of EPCR.[6] Accordingly, and working backwards through the trail of definitions, cell site information cannot constitute an "electronic communication" under the SCA. And since cell site data is neither a wire communication nor an electronic communication within the meaning of EPCA, then the information sought to be disclosed does not pertain to an "electronic communication service" within the meaning of the SCA. Consequently, the SCA cannot provide authority for disclosure of cell site data.

Judge Kaplan, in his decision approving an application for cell site information, avoids this result by refusing to incorporate EPCA's definition of "electronic communication" (which excludes any communication from a "tracking device") into the statute's definition of "electronic communications service." As Judge Kaplan reasoned, "[f]or the tracking device exception to have force here, the Court would have to incorporate the term 'electronic communication' into the term 'electronic communications service.' The Court declines to do so because the term 'electronic communications service' has its own, independent meaning under Section 2510." *S.D.N.Y. II,* 460 F.Supp.2d at 460. What this argument fails to acknowledge, however, is that the statute's definition of "electronic communications service" *itself* incorporates the term "electronic communication" by defining "electronic communications service" as "any service which provides to users thereof the ability to send or receive *wire or electronic communications.*" 18 U.S.C. § 2510(15) (emphasis supplied). Simply put, the court does not "have to incorporate the term 'electronic communication' into the term 'electronic communications service'" because Congress already has

done so. And since Congress has done so, the court would have to judicially amend the statute to remove the definition of "electronic communication" found at Section 2510(12) for the tracking device exception *not* to apply. For the same reason that I declined to remove the word "solely" from the from the phrase "solely pursuant" as used in Section 1002(a)(2) of CALEA, *see* Section II.B, *supra,* I cannot prune the definition of "electronic communication" from "electronic communication service." Consequently, I conclude that the SCA does not permit disclosure of a customer's location information, including cell site data.

## III.  CONCLUSION

"Finding the statutes proffered by the government insufficient to authorize the court to issue an order authorizing disclosure of prospective cell site information, the court ... is left with only the general authority to issue a Rule 41 warrant upon a showing of probable cause to believe that the data sought will yield evidence of a crime." *D.Md. I,* 416 F.Supp.2d at 397.

Having reached this conclusion, I hasten to point out two things. First, the decision in this was arrived at as a matter of statutory construction and likely is not constitutionally required. The Supreme Court has held that the warrantless monitoring of a tracking device does not offend the Fourth Amendment so long as the situs of the thing being tracked could be determined by visual observation from a public area and that the surveillance tells authorities nothing about the suspect's location within an area, such as a residence, where he/she enjoys a reasonable expectation of privacy. *See United States v. Karo,* 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984);

---

**6.** However, it does not follow that a cell phone must be considered a tracking device with respect to other types of cell phone com-

munications unrelated to physical location. *See S.D.Tex I,* 396 F.Supp.2d at 755–56.

*United States v. Knotts,* 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983). Nothing that I have read in preparing this opinion suggests that the limited geographic location information sought by the government in this case approaches the precision that would be required to implicate Fourth Amendment concerns. Thus, Congress could authorize disclosure of limited cell site information on a showing of less than probable cause if it decided to do so. What is clear to me, however, is that Congress has not authorized disclosure of cell site information in the statutes proffered by the government—namely the Pen Register Statute combined with the SCA.

Second, because the conclusion in this case is based on a statutory analysis, and not on Fourth Amendment grounds, the result is not changed by the limitations the government imposed on the precision of the location information it requested. While these limitations make the government's request less intrusive, they do not change the statutory analysis. As Magistrate Judge Feldman noted:

> The government's *statutory* rationale, however, is not dependent on whether the data captured is obtained from one cell tower or three cell towers. It is not dependent on whether the government obtains real time cell site data before, during, or after a cellular phone call. If the government is correct and Congress intended that judges pair the Pen Statute with the SCA to obtain real time cell data, there certainly is nothing in the statute to suggest it limited that authority to certain types of cell site data or only data which the government decides is "general location information." Moreover, there is nothing in the legislative history of CALEA to suggest that the exception clause was intended by congress to create some sort of sliding scale pairing mechanism, with the evidentiary standard for ordering disclosure hinging on the type or duration of pen register data or signaling information sought by law enforcement.

*W.D.N.Y.,* 415 F.Supp.2d at 219; *see also S.D.N.Y. II,* 460 F.Supp.2d at 452 ("arguments for statutory authorization ... apply equally whether information is obtained from one antenna tower at a time or from many simultaneously"); *D.Md. I,* 416 F.Supp.2d at 395 ("the fact that the requested information reveals less precise location information does not change the statutory analysis"). For this reason, those cases that granted the government's application on the ground that the request sought only limited location information, *see, e.g., S.D.Tex. II, supra,* are unpersuasive.

For the foregoing reasons, the government's applications at Dockets No. 37 and 39 are denied insofar as they request orders directing cell phone service providers to disclose limited cell site information upon a showing of less than probable cause.

**IT IS SO ORDERED.**