McGEE, Chief Judge, concurring.
I concur in the final disposition of the majority's opinion finding no error in the *543 trial court's denial of Defendant's motion to suppress the evidence obtained by State law enforcement officers from AT & T pursuant to a judicial order issued under the Stored Communications Act ("the SCA") in accordance with 18 U.S.C. § 2703(d). However, I respectfully disagree with the majority's characterization of the information obtained pursuant to that judicial order-which order was entered and executed on 11 December 2012 for information generated and transmitted on the same day from AT & T to law enforcement officers after only a "five- to seven-minute delay"-as "historical" information, rather than "real-time" information. *179 As described by the majority, on 11 December 2012, the trial court issued an order pursuant to an application under 18 U.S.C. § 2703(d)[1] authorizing at & t to provide law enforcement officers with "CELL SITe information including latitude, longitude, sector azimuth and orientation information" from 13 November 2012 through 12 December 2012, as well as "precision location/GPS, E911 locate or Mobile Locate Service" from 11 December 2012 through 12 December 2012 for Defendant's cell phone. Such order required that law enforcement officers needed only to demonstrate "specific and articulable facts showing that there [we]re reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, [we]re relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d) (2012). In other words, to obtain this judicial order for Defendant's cell phone information, law enforcement officers were required to meet a "statutory standard [that wa]s less than the probable cause standard for a search warrant." See United States v. Davis, 785 F.3d 498, 505 (11th Cir.2015).
On appeal, Defendant challenged the issuance of the judicial order with which law enforcement officers obtained the cell site information for Defendant's cell phone from AT & T for 11 December 2012 on 11 December 2012 as an erroneous authorization of an unconstitutional search using "real-time"[2] information obtained from Defendant's cell *180 phone without establishing probable cause and securing a warrant before conducting this search. Law enforcement officers-as well as the majority opinion-described the information obtained from AT & T as "historical" information, rather than " real-time" information. I believe the majority's characterization of the information acquired from AT & T as "historical," rather than "real-time," is incorrect.
"Cell phones operate through the use of radio waves. To facilitate cell phone use, cellular service providers maintain a network of radio base stations-also known as cell towers-throughout their coverage areas."
*544 In re Application for Tel. Info. Needed for a Crim. Investigation (California Cell Site Case ), No. 15-XR-90304-HRL-1(LHK), --- F.Supp.3d ----, ----, 2015 WL 4594558 (N.D.Cal. July 29, 2015). "Most cell towers have multiple cell sectors (or 'cell sites') facing in different directions." Id. at --- -. "A cell site, in turn, is a specific portion of the cell tower containing a wireless antenna, which detects the radio signal emanating from a cell phone and connects the cell phone to the local cellular network or Internet." Id. at ----; see United States v. Graham (Graham II ), 796 F.3d 332, 343 (4th Cir.2015) ( "Cell sites are placed at various locations throughout a service provider's coverage area and are often placed on towers with antennae arranged in sectors facing multiple directions to better facilitate radio transmissions.").
"Whenever a cell phone makes or receives a call, sends or receives a text message, or otherwise sends or receives data, the phone connects via radio waves to an antenna on the closest cell tower, generating [cell site location information]." California Cell Site Case, --- F.Supp.3d at ----; Graham II, 796 F.3d at 343 ("A cell phone connects to a service provider's cellular network through communications with cell sites, occurring whenever a call or text message is sent or received by the phone."). "When the phone connects to the network, the service provider automatically captures and retains certain information about the communication, including identification of the specific cell site and sector through which the connection is made." Graham II, 796 F.3d at 343. "By identifying the nearest cell tower and sector, [cell site location information] can be used to approximate the whereabouts of the cell phone at the particular points in time in which transmissions are made." Id. at 343. "The cell sites listed can be used to interpolate the path the cell phone, and the person carrying the phone, travelled during a given time period." Id. at 343. "The precision of this location data depends on the size of the identified cell sites' geographical coverage ranges." Id. at 343.
As commonly used, "historical" cell site location data "refers to the acquisition of cell site data for a period retrospective to the date of *181 the order, whereas 'prospective' or 'real-time' cell site data refers [to] the acquisition of data for a period of time going forward from the date of the order." Espudo, 954 F.Supp.2d at 1034. In other words, " '[r]eal time' cell site information refers to data used by the government to identify the location of a phone at the present moment ... [and] refers to all cell site information that is generated after the government has received court permission to acquire it," Maryland Cell Site Case, 402 F.Supp.2d at 599 ; see also United States v. Graham (Graham I ), 846 F.Supp.2d 384, 391 n. 7 (D.Md.2012) ("In a more invasive search, the government will request that the carrier retain records for all of a handset's automatic registrations, which occur approximately every seven to ten minutes. Such a request is prospective, as it asks for data generated after the court's order or warrant and involves data being generated and turned over to law enforcement in real time, or close to it." (second emphasis added)), aff'd by Graham II, 796 F.3d 332 (4th Cir.2015), and "encompasses only that location information that already has been created, collected, and recorded by the cellular service provider at the time the court authorizes a request for that information." In re U.S. for an Order Authorizing Disclosure of Location Info. of a Specified Wireless Tel., 849 F.Supp.2d 526, 535 n. 4 (D.Md.2011). However, "[r]ecords stored by the wireless service provider that detail the location of a cell phone in the past (i.e.: prior to entry of the court order authorizing government acquisition) are known as 'historical' cell site information." Maryland Cell Site Case, 402 F.Supp.2d at 599.
As the majority recognizes, most federal courts that have considered this issue have concluded that a request from law enforcement for real-time cell site information pursuant to the SCA requires probable cause,[3] while a request for historical cell site information requires only specific and articulable *545 facts. Thus, the characterization of information as "historical" or "real-time"-and, thus, the standard to which law enforcement must adhere in order to obtain such information-rests upon whether the information sought was generated before or after the issuance date of the order authorizing the transmission of information pursuant to 18 U.S.C. § 2703. *182 In the present case, law enforcement officers filed an application pursuant to 18 U.S.C. § 2703(d) on 11 December 2012:
Requesting complete call detail records (see below), with cell site information including latitude, longitude, sector azimuth and orientation information for the target telephone number(s)[.]
Requesting precision location/GPS, E911 locate or Mobile Locate Service if applicable from December 11, 2012 through December 12, 2012 for the phone number(s) listed below and additionally upon request, precision location/GPS for an additional thirty (30) days from the end date of this order for any new number(s) identified/associated with the account or account holder(s) as a result of account modifications[.]
Evidence presented at trial established that AT & T sent emails at regular intervals to law enforcement officers on 11 December 2012, that such emails contained longitude and latitude coordinates of Defendant's cell phone as captured by AT & T's cell tower sites, and that the information provided by AT & T was sent with a frequency and contemporaneousness with Defendant's then-current location-from somewhere between every five to seven minutes to every fifteen minutes-to allow law enforcement to track Defendant's location, through the information provided by AT & T, to a hotel where Defendant was physically located. For instance, one law enforcement officer testified that, by using the coordinates from AT & T, law enforcement "w[as] able to say for sure that [Defendant's cell phone] was in that hotel."
However, the majority has determined that the information acquired from AT & T was "historical," based on the following testimony: (1) that there was "probably a five- or seven-minute delay" from when Defendant's cell phone connected with the cell tower sites; (2) that "AT & T emailed the delayed recorded information to [the law enforcement officer] every fifteen minutes [;]" and (3) that law enforcement did not receive the information directly from Defendant's cell phone but, instead, had to enter the coordinates provided from AT & T's "stored records" "into a Google Maps search engine to determine the physical location of the last tower 'pinged.' "
Because most federal courts recognize that historical cell site information consists of information generated prior to the issuance date of a judicial order that allowed law enforcement to obtain such records for *183 a given defendant, and because I believe allowing the majority's characterization of the information provided by AT & T to law enforcement, based on the facts in this case, would effectively obliterate the distinction between "historical" and "real-time" cell site information, I must respectfully disagree with the majority's characterization. Nevertheless, because I agree with the majority opinion that the good-faith exception to the Fourth Amendment warrant requirement would allow the challenged evidence to stand, I decline to undertake an examination of whether the majority properly concluded that Defendant had a reasonable expectation of privacy in the real-time cell site information obtained by law enforcement from AT & T in light of Graham II and California Cell Site Case .

The other statutes referenced in the order were N.C. Gen.Stat. §§ 15A-261, 15A-262, and 15A-263. These statutes concern the application and approval procedures by which the State may install or use either a pen register or a trap and trace device. Nonetheless, since Defendant does not challenge any evidence gathered through these statutory mechanisms, and challenges only evidence gathered pursuant to the authority conveyed by 18 U.S.C. § 2703(d) of the SCA, we need not undertake an examination of these statutes.

While some courts have determined that "real-time" cell site information is a subset of "prospective" cell site information, see In re U.S. for an Order Authorizing Installation & Use of a Pen Register (Maryland Cell Site Case), 402 F.Supp.2d 597, 599 (D.Md.2005), "[c]ourts generally use both 'prospective' and 'real-time' interchangeably to refer to this type of data." United States v. Espudo, 954 F.Supp.2d 1029, 1034 n. 1 (S.D.Cal.2013). An example given to illustrate the distinction between these terms is as follows: "[I]magine the government receives a court order on a Monday granting access to prospective cell site information (i.e. all cell site information generated going forward). On Thursday, the government begins tracking the phone in real time; such information is both prospective and real time cell site information. On Friday, the government goes back and accesses the records of the phone's location on Tuesday and Wednesday; such information is prospective but not real time cell site information." Maryland Cell Site Case, 402 F.Supp.2d at 599 n. 5. However, in order to more plainly distinguish "real-time" or "prospective" cell site information from "historical" cell site information, I use the term "real-time" cell site information to encapsulate both "real-time" and "prospective" information, except when directly quoting other cases that use the term "prospective."

See, e.g., In re U.S. for Orders Authorizing Installation & Use of Pen Registers, 416 F.Supp.2d 390, 391 (D.Md.2006) ; In re U.S. for an Order Authorizing Installation & Use of a Pen Register, 415 F.Supp.2d 211, 214 (W.D.N.Y.2006) ; In re U.S. for an Order (1) Authorizing the Use of a Pen Register, 396 F.Supp.2d 294, 300 (E.D.N.Y.2005) ; In re Application for Pen Register, 396 F.Supp.2d 747, 765 (S.D.Tex.2005).