**IN THE MATTER OF THE APPLICATION OF THE UNITED STATES FOR AN ORDER:** (1) Authorizing the Installation and Use of a Pen Register and Trap and Trace Device; and (2) Authorizing Release of Subscriber Information and/or Cell Site Information

No. 06–5021M–01.

United States District Court, W.D. Louisiana, Shreveport Division.

Jan. 26, 2006.

---

## *MEMORANDUM RULING*

HORNSBY, United States Magistrate Judge.

### Introduction

Before the court is an *ex parte* application for an order authorizing the installation and use of a pen register and trap and trace device on a number assigned to a cell phone. In order to obtain this information, the Government must certify in its application to the court that the information sought is relevant and material to an ongoing investigation. 18 U.S.C. § 3122(b). The instant application meets that standard and is otherwise in good form. However, the instant application is unique in that it also seeks prospective information disclosing the location of cell site/sector (physical address) at call origination (for outbound calling), call termination (for incoming calls) and, if reasonably available, during the progress of a call for the subject telephone number. The Government contends that prospective cell site information can be obtained pursuant to the combined authority of the Pen Register Statute, 18 U.S.C. § 3121 et seq., and the Stored Communications Act (SCA), 18 U.S.C. § 2703. Under the SCA, the Government may apply for a court order requiring a provider of an electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (but not including the contents of communications) upon a showing of specific and articulable facts demonstrating reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. § 2703(d). This standard is higher than the standard applied to a pen register application, but less than the probable cause standard needed for a search warrant.

Magistrate Judges in at least five different divisions (S.D. Texas, E.D. New York, D. Maryland, D. Columbia and E.D. Wisconsin) have rejected the Government's applications for prospective cell site information. It is unknown whether the Government has appealed any of those decisions. One Magistrate Judge has published an opinion permitting the Government to obtain prospective cell site information upon meeting the standard set forth in the SCA, that is, a showing of specific and articulable facts demonstrating reasonable grounds to believe that the information sought is relevant and material to an ongoing criminal investigation. *In re Application,* 405 F.Supp.2d 435 (S.D.N.Y.2005)(Gorenstein, M.J.). The undersigned also has received anecdotal reports of other magistrate judges both granting and denying similar applications, but such actions are often taken without the issuance of an opinion.

In the case before Magistrate Judge Gorenstein, he carefully distinguished the applications in the prior court decisions from the application before him: in his

case, the Government did not seek any cell site data when no call was in progress; the location data sought applied only to the single cell tower with which the cell phone was communicating (so that no triangulation would be possible to pinpoint the precise location of the cell phone user); and the data was not provided directly to the Government, but was instead transmitted from the cell phone service provider to a computer maintained by the Government.

After a detailed analysis of the Pen Register Statute, the Communications Assistance for Law Enforcement Act of 1994 (CALEA), the Stored Communications Act and the Fourth Amendment, Magistrate Judge Gorenstein held that the Pen Register Statute—in combination with the provisions of the SCA—authorizes disclosure of prospective cell site information upon a showing of specific and articulable facts demonstrating reasonable grounds to believe that the information sought is relevant and material to an ongoing criminal investigation. Magistrate Judge Gorenstein carefully tailored his order, however, to limit his opinion to the particular application before him. Specifically, Magistrate Judge Gorenstein made clear that his order authorized the production of only: (1) information regarding cell site location that consists of the tower receiving transmissions from the target phone; (2) tower information that is tied to a particular call made or received by the cell phone user; and (3) information that is transmitted from the cell phone service provider to the Government. The Government was not authorized to obtain any other information pursuant to his order.

Thus, the Government's application did not seek, and Magistrate Judge Gorenstein's order did not authorize, any cell site information that might be available when the user's cell phone was turned "on" but a call was *not* in progress. And because the information sought was tied only to the particular tower that was, in turn, tied to a particular call, information would *not* be obtained that would allow the Government to triangulate multiple tower locations and thereby pinpoint the exact location of the user at any time. Under Judge Gorenstein's order, the Government would, at best, learn the cell site areas or sectors through which the cell phone user traveled during a call and the user's general proximity to the towers used during the call. If no call was made or received, then no cell site area or sector information would be available to the Government.

The Government's application in this case seeks only the same information (by type and degree) allowed by Magistrate Judge Gorenstein. Because I agree with Magistrate Judge Gorenstein's analysis of the relevant statutory framework, I adopt his detailed analysis and will allow the Government to obtain the same information *subject to the same limitations.* It is unnecessary to repeat Magistrate Judge Gorenstein's analysis of the statutory framework herein, but a few remarks should be made in order to address some of the concerns articulated in the opinions of other Magistrate Judges written after the issuance of Magistrate Judge Gorenstein's opinion and some additional concerns expressed by the Federal Public Defender (FPD) in her *amicus* letter brief submitted at my request.

**Triangulation**

Two opinions issued after the date of Magistrate Judge Gorenstein's opinion have denied cell site applications from the Government. *In Matter of Application of U.S. For an Order Authorizing the Release of Prospective Cell Site Information,* 2006 WL 41229 (D.D.C. Jan.6, 2006); and *In Matter of Application of U.S. For an Order Authorizing the Disclosure of Prospective Cell Site Information,* 412 F.Supp.2d 947, 2006 WL 243017 (E.D.Wis.

2006). The District of Columbia case construed the Government's application as seeking location information obtained by "triangulation," 407 F.Supp.2d at 139, 2006 WL 41229, at *5, which could reveal "the location of a cell phone every minute of every day that the cell phone was on." *Id.* at 407 F.Supp.2d at 140, 2006 WL 41229, *6. Concerns about triangulation and "virtual mapping" are also articulated by the FPD in her brief. Because no triangulation or similarly detailed information is being sought here, the District of Columbia Opinion does not affect the court's analysis of the Government's application.

### Director Freeh's Testimony

The Wisconsin Opinion differs from Magistrate Judge Gorenstein's opinion in that it reads much into FBI Director Freeh's assertion that the FBI was not seeking location information pursuant to the Pen Register Statute. Wisc. Opinion at pp. 13, 16. It concludes that the Government therefore cannot use the Pen Register Statute to obtain location information, even if it is used in combination with another statute. *Id.* at 16. The problem with this analysis is that the statute Congress actually enacted following Director Freeh's testimony does not state that it is barring location information from being obtained "pursuant" to the Pen Register Statute. Instead, it states that location information may not be obtained "solely pursuant" to the Pen Register Statute. As the Wisconsin Opinion itself notes, Director Freeh told Congress that the FBI believed that location information could be obtained by means of other statutory authority—that is, pursuant to "court orders or subpoenas." Wisc. Opinion at 13. Thus, the Congressional enactment is consistent with Director Freeh's view that CALEA would not bar the FBI from obtaining location information by some mechanism.

### GPS Technology and Tracking Devices

Some cell phone companies, including Nextel, have cell phones that contain global positioning systems (GPS). Those systems allow Nextel to determine its users' locations anytime the cell phone is turned on. Most other cell phones do not contain or employ GPS technology at this time. The Government does not seek (and the court does not authorize the release of) GPS information. The Government also does not seek (and the court does not authorize the release of) cell site information that might be available when the cell phone is off or when no call is made or received. Thus, even if one accepts the argument that a cell phone could be considered a "tracking device," the Government's application does not seek tracking information from it.

A cell phone is not a tracking device as that term is commonly understood. Tracking devices are devices that are "installed" at the request of the Government. 18 U.S.C. § 3117(a). Cell phones are not "installed." They are carried (usually in a person's pocket or purse) and used voluntarily. Any cell phone user who has ever had a call dropped due to a lack of service knows that their cell phone communicates with the nearest tower. Some towers are miles apart. When the nearest tower is outside of the user's network, roaming and other charges may apply to the call. Therefore, users know that third party service providers are aware of their general location vis-a-vis the nearest tower, at the beginning of, during and at the end of each call. If the owner of a cell phone does not wish to convey that information to the third party service providers, he can simply not make a call or he can turn his cell phone off. The existence of a true "tracking device" is unknown to, and cannot be disabled or turned off by, the person being tracked.

## Fourth Amendment

Based on her assumption that the cell site information sought by the Government would allow the Government to compile a virtual map and pinpoint the cell phone user's location, the FPD argues that such information can only be made available to the Government pursuant to the warrant requirement of Rule 41. This assumption is erroneous because, as explained above, the Government does not seek that information and the court does not authorize its release. The cell phone user's movements will not be tracked in the strict or literal sense of the word. As authorized herein, the Government will only be able to determine that the cell phone user was in the area of a particular tower or towers during a call. Unlike true tracking devices, locations within buildings cannot be determined by the information authorized by this ruling. And no information will be provided to the Government unless a call is made or received.

The FPD recognizes that the Supreme Court has permitted warrantless location tracking where the information obtained by the tracking device could have been obtained by visual surveillance from public places. *United States v. Knotts,* 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983). However, the FPD argues that in *United States v. Karo,* 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984), the Supreme Court ruled that the Fourth Amendment prohibits the warrantless use of a tracking device that revealed non-public information. In that case, the beeper was monitored while it was inside the defendant's home. Citing *Karo,* the FPD argues that a warrant must be obtained when tracking a cell phone because the Government will have no way of knowing in advance whether only public information will be revealed or whether private information will be discovered as well.

Here, however, the cell phone user will not be "tracked" while in his private residence. The cell site information sought by the Government in this application (and authorized by the court herein) does not permit detailed tracking of a cell phone user within any residence or building. Indeed, the Government will not be able to pinpoint which room, house or building (if any) the user is in. The Government will know only that the user has made or received a call on his cell phone, and that his cell phone communicated with a particular tower or towers during the call. Under these particular circumstances, no Fourth Amendment concerns are implicated.

It bears mentioning that if a pen register and trap and trace device is installed on a suspect's home phone (land line), the suspect's general location will be disclosed every time he dials a number from that phone. The Government may not know where within the home the suspect is located, but they will know that he (or someone in his home) is dialing from his phone. The cell site information sought and allowed in this case is much less specific. The Government will not be able to tell if the suspect is in his home, in his yard or at his neighbor's house down the street.

## Summary and Conclusion

The Government's application in this instance meets the standards and requirements of the Pen Register Statute and the SCA. Specifically, the Government has set forth specific and articulable facts demonstrating reasonable grounds to believe that the information sought in its application is relevant and material to an ongoing criminal investigation. Accordingly, the Government's application will be granted as follows: The Government may obtain *only* the following prospective cell site location information from the cell phone service provider: (1) information regarding cell site location that consists of the tower

receiving transmissions from the target phone; (2) tower information that is tied to a particular call made or received by the cell phone user; and (3) information that is transmitted from the cell phone service provider to the Government. The Government is not authorized to obtain and shall *not* obtain pursuant to this ruling or any order issued herewith: (1) any cell site information that might be available when the user's cell phone was turned "on" but a call was *not* in progress; (2) information that would allow the Government to triangulate multiple tower locations and thereby pinpoint the location of the user; and (3) GPS information on the location of the user, even if that technology is built into the user's cell phone. *The Government is directed to resubmit its proposed order on the pending application to include these express limitations.*