**In re APPLICATIONS OF THE UNITED STATES of America FOR ORDERS PURSUANT TO TITLE 18, UNITED STATES CODE, SECTION 2703(d) TO DISCLOSE SUBSCRIBER INFORMATION AND HISTORICAL CELL SITE INFORMATION FOR MOBILE IDENTIFICATION NUMBERS: (XXX) XXX–AAAA, (XXX) XXX–BBBB, and (XXX) XXX–CCCC.**

**Nos. MJ07–264–JLA [ (XXX) XXX–AAAA], MJ07–265–JLA [ (XXX) XXX–BBBB], MJ07–266–JLA [ (XXX) XXX–CCCC].**

United States District Court,
D. Massachusetts.

July 27, 2007.

Robert E. Richardson, United States Attorney's Office, Boston, MA, for Plaintiff.

## MEMORANDUM & ORDER

ALEXANDER, United States Magistrate Judge.

### INTRODUCTION

This Court has before it the Government's application for three orders compelling a telecommunication service provider to disclose to federal law enforcement agents *historical* cell site information. The Government attempts to obtain such orders by satisfying the "specific and articulable facts" standard embodied in 18 U.S.C. § 2703(d). This Court, however, questions the applicability of the "specific and articulable facts" standard to historical cell site information. As more fully detailed below, after careful consideration of the pertinent statutes, the objectives underlying the different demonstrative standards, and the practical application of the orders the Government seeks, this Court finds that for it to issue an order compelling a telecommunication service provider to disclose historical cell site information to federal law enforcement agents, the Government must establish probable cause, as consistent with the requirements of Rule 41 of the Federal Rules of Criminal Procedure.[1]

### DISCUSSION

The Court's research into this rapidly evolving topic reveals, albeit a relatively small number of cases, a myriad of opinions considering a number of interrelated topics.[2] To be clear, the issue presented

---

1. The Government makes no effort in its application to satisfy the probable cause requirements of Fed.R.Crim.P. 41.

2. At the outset, for clarity it is necessary to explain this Court's method for citation to these opinions. As many of the cited courts have observed, citations to the formal captions of this genre of cases are cumbersome, at best. Every court has made a choice as to how it wishes to cite to these opinions, and this Court does not wish to further confuse the issue. Accordingly, each opinion will be cited in full once and subsequent citations will simply refer to the Judge who authored said opinion.

here is only this: In order for the Government to obtain authorization from this Court to receive historical cell site information [3] from a telecommunication service provider, must the Government satisfy the lesser "specific and articulable facts" standard, or the more exacting probable cause standard as contemplated by Fed. R.Crim.P. 41? While this Court's views with regard to the disclosure of *prospective* cell site information, the propriety of the Government's "hybrid" approach, and other interrelated issues is perspicuous, they are not central to this decision and are left to another day for more detailed discussion and analysis. *See, e.g., In Matter of Application of the United States of America for an Order Authorizing the Installation and Use of a Pen Register Device, a Trap and Trace Device, and for Geographic Location Information,* 497 F.Supp.2d. 301, 303 (D.P.R.2007) (McGiverin, M.J.) (listing a multitude of decisions where numerous courts have addressed these issues).

### Statutes

This Court's analysis begins, as it must, with the statute under which the Government makes its application for the disclo-

sure of historical cell site information. Specifically, the Government makes its application pursuant to 18 U.S.C. § 2703(d). As previously analyzed by a number of our sister districts, however, the interplay of sections 2703, 18 U.S.C. § 3121–27, and 42 U.S.C. §§ 1001–1002 are essential to a comprehensive treatment of the issue.[4]

*Pen/Trap Statute—18 U.S.C. §§ 3121–3127*

The Pen/Trap Statute is found at Title III of the ECPA. There, Congress defined a "Pen Register" as a "device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted …" 18 U.S.C. § 3127(3). 18 U.S.C. 3127(4) defines a "Trap and Trace device" as "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication …" In practice, pen registers are installed on telephones or attached to telephone lines are

3. This Court will not attempt to delve into the complex technical nuances among various aspects of cell site information that other judges have so thoroughly undertaken. *See, e.g., In Re Application of the United States for an Order for Prospective Cell Site Location Information on a Certain Cellular Telephone,* 460 F.Supp.2d 448 (S.D.N.Y.2006) (Kaplan, J.); *In Re Application of the United States of America for an Order for Disclosure of Telecomms. Records,* 405 F.Supp.2d 435 (E.D.N.Y.2005) (Gorenstein, M.J.); and *In Re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority,* 396 F.Supp.2d 747 (S.D.Tex.2005) (Smith, M.J.). In any event, such technical analysis is not necessary in this instance, as the basic premise of this opinion centers upon a determination of the appropriate standard for obtaining any records that provide location, no matter what the technology used.

4. With acknowledgment to Judge Orenstein, this Court follows his footsteps in easing the reader's eyes by adopting the following shorthand for applicable statutes discussed herein: "Pen/Trap Statute" refers generally to 18 U.S.C. §§ 3121–27; the "SCA" (Stored Communications Act) refers generally to 18 U.S.C. §§ 2701–12; "CALEA" (Communications Assistance for Law Enforcement Act of 1994) refers generally to 47 U.S.C. §§ 1001–1002; and "ECPA" refers to the Electronic Communications Privacy Act of 1986, Pub.L. No. 99–508, 100 Stat. 1848 (1986). *In re: Application of the United States for an Order (1) Authorizing the Use of a Pen Register and a Trap and Trace Device and (2) Authorizing Release of Subscriber Information and/or Cell Site Information,* 396 F.Supp.2d 294, 296 n. 2 (E.D.N.Y.2005) (Orenstein, M.J.).

designed to record telephone numbers dialed into and out of the subject telephone. *In re Application of United States for an Order, etc.,* 616 F.2d 1122, 1127 (9th Cir. 1980) (Orrick, J.).

■ The pen register and trap and trace device, as investigative tools, are favored by law enforcement because of the ease with which permission to install them can be obtained from an appropriate judicial officer. *In Re Application of the United States for an Order (1) Authorizing the Installation and Use of a Pen Register and Trap and Trace Device; and (2) Authorizing Release of Subscriber Information and/or Cell Site Information,* 411 F.Supp.2d 678, 679 (W.D.La.2006) (Hornsby, J.) (Under 18 U.S.C. § 3122(b), the Government must show merely that "the information sought is relevant and material to an ongoing investigation"). Simply put, to obtain permission to install a pen register and/or trap and trace device, the Government need not accumulate facts sufficient to establish probable cause for a warrant. *See Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (holding that a person has no reasonable expectation of privacy in the telephone numbers he dials). A court will, generally, issue the *ex parte* order permitting the installation of a pen register and/or trap and trace device so long as the Government Attorney certifies that "the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation." 18 U.S.C. § 3123(a)(1).

■ There are limits, however, to the Government's use of a pen register and/or trap and trace device. For example, pen registers do not have sound capabilities and thus are incapable of acquiring the contents of communications. *United States v. New York Tel. Co.,* 434 U.S. 159, 167, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977).

Also, neither a pen register nor trap and trace device may be used in a manner so as to constitute a "tracking device" as defined in 18 U.S.C. § 3117(b), without first making a showing of probable cause consistent with Fed.R.Crim.P. 41.

### SCA–18 U.S.C. §§ 2701–2712

The SCA is found at Title II of the ECPA. Part of the SCA's purpose, as clearly gleaned from the title of section 2703, is to dictate the means by which access may be granted to stored wire and electronic communications and transactional records. *See* S.Rep. No. 541, at 35–36 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 3555, 3589–90. More specifically, section 2703 addresses the disclosure of both the contents of wire and electronic communications as well as records of wire and electronic communications. Briefly, sections 2703(a) and (b) address contents, whose disclosure requires probable cause. Where the Government seeks access to "records concerning electronic communication service or remote computing service" under sections 2703(c) and (d), absent consent or an emergency, it must establish "specific and articulable facts showing that there are reasonable grounds to believe that ... the records or other information sought are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

### CALEA—47 U.S.C. §§ 1001–1002

Through its enactment of CALEA, Congress intended the statute to provide a means of enhancing law enforcement's abilities to intercept communications involving advanced technologies. H.R.Rep. No. 103–827(I), at 9 (October 4, 1994), *as reprinted in* 1994 U.S.C.C.A.N. 3489, 3489 (103rd Congress). Congress recognized that the rapidly expanding evolution of technology threatened to eviscerate the applicability of current statutes designed

to not only protect the privacy rights of individuals, but also to aid law enforcement's investigative responsibilities. *Id.* In striking this balance between the expected privacy rights of individuals and the necessity for potent law enforcement, Congress placed some specific limitations within the statute that serve both purposes. *See* 47 U.S.C. § 1002(a)(4) (Providing Government agents with unimpeded access to authorized communications, but in a manner such that the security and privacy of communications not authorized to be intercepted is not violated.).

In the current debate, there is no CALEA provision of greater significance than that found at 47 U.S.C. § 1002(a)(2)(B). Read with the preceding provisions of the section for clarity, the statute provides as follows:

> [A] telecommunications carrier shall ensure that its equipment, facilities, or services that provide a customer or subscriber with the ability to originate, terminate, or direct communications are capable of . . . expeditiously isolating and enabling the government, pursuant to a court order or other lawful authorization, to access call-identifying information that is reasonably available to the carrier . . . in a manner that allows it to be associated with the communication to which it pertains, except that, with regard to information acquired solely pursuant to the authority for pen registers and trap and trace devices (as defined in section 3127 of Title 18), such call-identifying information *shall not include any information that may disclose the physical location of the subscriber* (except to the extent that the location may be determined from the telephone number)

47 U.S.C. § 1002(a) (internal subsection headings omitted) (emphasis added).

 CALEA, thus, specifically forbids providers from disclosing "any information that may disclose the physical location of the subscriber" when the Government proceeds "solely pursuant to the authority for pen registers and trap and trace devices." It is from the word "solely" where, the Government has previously argued, the aptly named "hybrid" theory derives.

### Historical Records

Breaking down the Government's application into its most rudimentary form, the Court is left with a seemingly simple question: What is the Government looking for? The answer appears equally simple: "historical cell site information. . . ." Logically, the Government cites as its authority for acquiring this information, the SCA, particularly section 2703(d). It goes without saying, the Government would implicitly contend, that "historical cell site information" is "records or other information" as contemplated by the SCA. Thus, as a record or other information, authority for disclosure follows if the Government satisfies the requirements of section 2703(d).

 While disclosure pursuant to an authorization founded on compliance with section 2703(d) appears logical on its face, taking the further and necessary step of understanding the ramifications of this scenario reveals the reality of an illogical conclusion. The Government's contention glosses over a critical distinction between "historical cell site information" and "records or other information." Because historical cell site information may provide a "real-time" physical location of the cell phone, its use becomes tantamount to a tracking device, as defined in 18 U.S.C. § 3117(b). As such, disclosure of historical cell site information is subject to a higher level of scrutiny, requiring the demonstration of probable cause before a court may issue an order to disclose the requested information.

*Records or Other Information*

Section 2703(d)'s term "records or other information" (hereinafter "historical records"), while understandably viewed to encompass anything that might logically be considered to fall under the term (including historical cell site information), is misleading in this context. The realistic fact is that historical cell site information differs from historical records in a critical respect. Simply, historical records provide relatively sterile data that is "voluntarily conveyed by the user to the phone company," *Judge Smith*, 396 F.Supp.2d at 756, while historical cell site information provides the location of a person or object. *See, e.g., United States v. Forest*, 355 F.3d 942 (6th Cir.2004) (recognizing that cell phone tracking can be accomplished as simply as a law enforcement agent dialing the target's phone number); *see also Judge Orenstein*, 396 F.Supp.2d at 294 (describing Judge Smith's decision, 396 F.Supp.2d 747, that "the disclosure of cell site information [which necessarily includes location information] turns a mobile telephone into a tracking device and, therefore, such disclosure may not be authorized without a showing of probable cause," making no distinction between historical and prospective cell site information).

*Cell Site Information*

■ Initially, "cell site information" is not defined in the potentially applicable statutes cites above. Not being defined in an applicable statute, this Court looks for guidance in the decisions of its fellow jurists. Judge Smith characterized the "location of cell site" as a "physical address." 396 F.Supp.2d at 748. Judge Smith further refers to, "cell site data/info" as information "which reveals the user's physical location while the phone is turned on." *Id.* As such, the information contemplated in the definition of "cell site information" includes the physical address/location of the cell site, the call origination, call termination, as well as the strength, angle, and timing of the caller's signal. *Id.* at 749. This data even includes a listing of all cell towers in the market area, switching technology, protocols, and network architecture, all of which have the cumulative effect of alerting law enforcement as to the target's physical location. *Id.; see also In Re Application of the United States for an Order Authorizing the Installation and Use of a Pen Register and/or Trap and Trace and the Disclosure of Subscriber and Activity Info. under 18 U.S.C. § 2703*, 415 F.Supp.2d 211, 218 (W.D.N.Y.2006) (Feldman, M.J.); *In Re Application of the United States for an Order Authorizing the Release of Prospective Cell Site Info.*, 407 F.Supp.2d 134, 136 (D.D.C.2006) (Facciola, J.); *Judge Orenstein*, 396 F.Supp.2d at 300; *Judge Kaplan*, 460 F.Supp.2d at 452 (observing that cell site information from multiple towers may be used by law enforcement to triangulate the caller's precise physical location).

As these and other courts recognize, with cell site information, law enforcement may engage in the tracking of a targeted person or object. "[T]he distinction between cell site data and information gathered by a tracking device has practically vanished." *Judge Smith*, 396 F.Supp.2d at 754.

### Specific and Articulable Facts v. Probable Cause

*Congressional Intent*

■ As aptly summarized by Judge Smith, there are four basic levels of scrutiny a Court will apply when deciding whether to issue its approval for various types of electronic surveillance. First, and at the lowest level (i.e. easiest to demonstrate), for the Government to obtain approval for a pen register/trap and trace

under 18 U.S.C. §§ 3121–27, it must provide certified relevance. Next, to obtain stored communications and subscriber records (i.e. historic information), the Government must satisfy 18 U.S.C. § 2703(d) and provide specific and articulable facts. Third, the use of tracking devices pursuant to 18 U.S.C. § 3117 requires probable cause in accordance with Fed.R.Crim.P. 41. Finally, wiretaps under 18 U.S.C. § 3117 require the highest level of scrutiny (known as a super-warrant). *See Judge Smith*, 396 F.Supp.2d at 753.

There is no dispute that Congress intended section 2703, as a whole, to apply only to historical records and not prospectively. *See id.* at 759 n. 16; *Judge Orenstein*, 396 F.Supp.2d at 307 n. 10. Specifically, the Government seeks "historical cell site information . . . for a time period of twenty-one (21) days from the date of the Court's order. . . ." Accordingly, the Government presents its application pursuant to 18 U.S.C. § 2703(d), seeking the disclosure of historical records under the specific and articulable facts standard.

Application of section 2703(d) is contingent upon application of section 2703(c). Section 2703(c) specifically deals with "Records concerning electronic communication service or remote computing service." Section 2703(c)(1) allows that "a governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the government entity . . . (A) obtains a warrant . . . (B) obtains a court order. . . ." If said warrant or order is obtained, the subject provider "shall disclose to a governmental entity the—local and long distance telephone connection records, or records of session times and durations. . . ." 18 U.S.C. § 2703(c)(2)(C).

Section 2703(d) further directs what requirements must be met for a court order of disclosure of historical records to be issued. Section 2703(d) provides that said order "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the . . . records or other information sought, are relevant and material to an ongoing criminal investigation." Taken together, then, sections 2703(c) and (d) outline the procedures by which Congress directed the Government to following in the pursuit of access to these historical records.

It is true that some recent District Court cases imply that the term "information" as used in section 2703(c) includes "historical site-cell information." *See, e.g., Judge Smith*, 396 F.Supp.2d at 759 n. 16; *Judge Orenstein*, 396 F.Supp.2d at 327; and *Judge Feldman*, 415 F.Supp.2d at 214. If these courts are correct, the Government, pursuant to section 2703(d), may obtain historical cell-site information pursuant to a court order issued on the "specific and articulable facts" standard. This Court disagrees, however, and finds a clear distinction between cell site information and "stored communications" and/or "subscriber records."

It is significant that nothing in the SCA defines the terms "stored communications" and "subscriber records." Further, it must be noted that no court has squarely held that "information" within the context of section 2703 includes "historical cell site information." For example, Judge Smith refers to "historical cell site information" in a footnote as a means of contrasting the conclusion that prospective cell site data is not a transactional record under the SCA. *Judge Smith* at 759 n. 16. Precisely, the footnote states the following: "Historical cell site data *more comfortably* fits the category of transactional records covered

by the SCA." (emphasis added). While the fit may be more comfortable, it is still the wrong size.

Likewise, Judge Orenstein's informative and thorough opinion makes reference to his belief that "information" as used in the SCA includes historical cell-site information; "no doubt that the SCA authorizes a service provider's disclosure to law enforcement of historical cell site information." 396 F.Supp.2d at 307 n. 10. However, whether or not the SCA provides such authorization with respect to historical cell-site information was not at issue in that case. There, the only matter before Judge Orenstein dealt with the limited question of whether the Government may obtain cell site information on a *prospective,* real-time basis without a showing of probable cause. *Id.* at 295. Judge Orenstein's comments about "historical cell site information," while certainly of scholarly and persuasive value, remain, nonetheless, dicta.

Additionally, Judge Feldman, opined that pursuant to 2703(d) the Government is authorized "to obtain historical cell site data, including location information, upon a showing that there are reasonable grounds to believe that the historical data sought is relevant and material to an ongoing criminal investigation." 415 F.Supp.2d at 214. Accordingly, the Government may obtain historical cell site data without probable cause, i.e. without a warrant. Judge Feldman's opinion, however, was not centered around the issue of what is the proper standard required for the Government to obtain historical cell site data; rather, the issue presented to the court was whether or not the Government could obtain "real-time" cell location data upon a factual showing of less than probable cause ("reasonable grounds to believe" standard). *Id.* at 212. Therefore, Judge Feldman's discussion of historical cell site information is,

like that of Judge Smith and Judge Orenstein, informative dicta on an undeveloped area of law.

Most courts to address the issue of Congressional intent with regard to the interpretation of the SCA naturally arrive at an examination of CALEA's prohibition of tracking the physical location without first obtaining a warrant based on probable cause. This provision, again, expressly forbids service providers from disclosing information that might reveal the *physical location* of subscribers when the Government proceeds according to authority provided under the Pen/Trap Statute. Thus, Congress has spoken as to the Government's ability to obtain the location of a cell phone without a showing of probable cause. Through CALEA, Congress effectively closed a loophole that would have allowed government agents use of a pen register and/or trap and trace device, on less than a showing of probable cause, to obtain information that could normally only be gathered subsequent to a finding of probable cause.

Here is where the Government has often argued that the word "solely" allows it to combine both the Pen/Trap Statute with section 2703 in order to satisfy CALEA and obtain cell site information without meeting satisfying the probable cause standard. Under the "hybrid" approach, the Government often attempts to convince courts to read the provisions of the Pen/Trap Statute and the SCA together to satisfy CALEA's "solely" prohibition. The Government's hope is that such a reading would authorize the disclosure of cell cite information (usually in a prospective context) upon satisfaction of the "specific and articulable facts" standard. This "hybrid" approach has, however, largely been rejected as contrary to Congress' intentions. *See, e.g., In Re Application of the United States for an Order Authorizing the Dis-*

*closure of Prospective Cell Site Information,* 412 F.Supp.2d 947, 958 (E.D.Wis. 2006) (Callahan, M.J.); *In Re Application of the United States for an Order for Prospective Cell Site Location Info. on a Certain Cellular Telephone,* 2006 WL 468300, **1–2, 2006 U.S. Dist. LEXIS 11747 at 5 (S.D.N.Y.2006) (Peck, M.J.); *Judge Bredar,* 416 F.Supp.2d at 395; *Judge Feldman,* 415 F.Supp.2d at 219; *In Re Application of the United States of America for an Order: (1) Authorizing the Installation and Use of a Pen Register and Trap and Trace Device; (2) Authorizing the Release of Subscriber and Other Information; and (3) Authorizing the Disclosure of Location–Based Servs., et al.,* Nos. 1:06–MC–6, 1:06–MC–7, 2006 WL 1876847, at *3 (N.D.Ind. June 26, 2006) (Lee, J.).

Further, Congress' recognition of the importance of the public's expectation of privacy in their physical location is clearly demonstrated through its enactment of the Wireless Communication and Public Safety Act of 1999. PL 106–81, 113 Stat. 1288 (Oct. 26, 1999), which amended the Telecommunications Act. Specifically, 47 U.S.C. § 222(f) recognizes that customers are not considered to have approved the use, disclosure of, or access to call location information absent express prior authorization. Congress, obviously, understood that "[physical] location information is a special class of customer information" of such a profound nature that "a cell phone user may very well have an objectively reasonable expectation of privacy in his call location information." *Judge Orenstein,* 396 F.Supp.2d at 323.

*Tracking Device*

■ As previously mentioned, Congress intended that section 2703 apply retrospectively, to historical records. *See Judge Smith,* 396 F.Supp.2d 747, 759 n. 16. To

obtain historical records, the burden is a "lesser" one of showing "specific and articulable facts." *Id.* at 752. As detailed above, Government requests for prospective cell site information, with the potential for actually locating, though admittedly imprecisely,[5] a particular cell phone, have routinely been rejected when applied for under this standard. Such applications require the stricter standards of Fed. R.Crim.P. 41 for obtaining a warrant based on probable cause because numerous courts consider the disclosure of prospective cell site information the equivalent of a tracking device, as defined at 18 U.S.C. § 3117(b). *See e.g. Judge Smith,* 396 F.Supp.2d at 757; *Judge Orenstein,* 396 F.Supp.2d at 323; Judge Callahan, 412 F.Supp.2d at 954; *cf. Judge Bredar,* 402 F.Supp.2d at 603–604 (contending that the Government may not be constitutionally required to obtain a warrant if the phone remains in a public place where visual surveillance is available).

Despite the Government's repeated attempts to make an end-around the warrant requirement for prospective cell site information with its "hybrid" theory, courts have generally found that CALEA, despite the controversial use of the word "solely", effectively ends the discussion. *In Re the Application of the United States,* 441 F.Supp.2d 816, 832 (2006) (nothing in the legislative history suggests that the word "solely" is of any significance); *In the Matter of the Application of the United States of America for Orders Authorizing the Installation and Use of Pen Registers and Caller Identification Devices,* 416 F.Supp.2d 390, 394 (D.Md.2006) (CALEA is an express application of Congress' intent).

---

5. "Textually, § 3117(b) does not distinguish between general vicinity tracking and detailed location tracking." *Judge Smith,* 396 F.Supp.2d at 755.

With CALEA, which specifically and unequivocally prohibits the Government's use of the Pen/Trap Statute to enable its commandeering of an unsuspecting user's cell phone as a tracking device, Congress clearly demonstrated its intent to prevent the tracking of individuals without a probable cause determination. *Judge Bredar*, 402 F.Supp.2d at 601 ("The 1994 Amendments to the SCA raised, rather than lowered, the standard for acquiring access to non-content information."). Additional support may be found in FBI Director Louis J. Freeh's testimony before Congress on the effect CALEA was intended to have on the implementation of tracking devices. Briefly, Director Freeh testified that through CALEA, "there is no intent whatsoever ... to acquire anything that could properly be called 'tracking' information" absent issuance of a warrant. *Judge Callahan*, 412 F.Supp.2d at 955–56. As aptly described by Judge Callahan, "the language which found its way into the law was predicated on the Director's assertion to Congress that, in the government's view, pen register and trap and trace devices were not to be, and would not be, used to secure location information for the cellular phone user." *Id.* at 956.

The definition of a tracking device, as contemplated by 18 U.S.C. § 3117(b), is broad. *Judge Smith*, 396 F.Supp.2d at 752 ("This broad definition, which is cross referenced in other portions of the ECPA, carries important implications for cell site data access...."); *Judge Bredar*, 402 F.Supp.2d at 603 (the definition "contains no articulation of how precise a device must be"); *Judge McGiverin*, 2007 WL 2058924, at *8 ("when a cell phone is used to determine a person's location, it falls within the meaning of a tracking device"). Further, the same Fourth Amendment concerns that drive the necessity for a probable cause showing before authorization of a prospective tracking device apply equally to a "historical" tracking device.

In accord with the protection guaranteed under the Fourth Amendment, the central inquiry as to whether probable cause is required before the Government may "search" a targeted individual is whether the targeted individual has exhibited an actual (subjective) expectation of privacy and whether the individual's subjective expectation of privacy is one that society would view as being reasonable. *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *see also United States v. Knotts*, 460 U.S. 276, 281, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983). Thus, what an individual seeks to preserve as private, and thus free from inspection, though it may be in a public area, may nevertheless be outside of the government's reach.[6] *Katz* at 353, 88 S.Ct. 507; *Ex parte Jackson*, 96 U.S. 727, 733, 24 L.Ed. 877 (1878).

Expecting a right to privacy in the location[7] of where one is, or where one will be shortly, yet losing that expectation once

---

6. In *Warshak v. United States*, the Sixth Circuit held that an individual maintains a reasonable expectation of privacy in e-mails stored with, or sent through, an internet service provider ("ISP"). 490 F.3d 455, 462–63 (6th Cir.2007). Even though the ISP **could** access the content of the e-mails, there is a societal expectation that the ISP will not access the content of the information as a matter of course. *Warshak* at 463. Based on this reasonable expectation of privacy, the government was required to show probable cause in order to seize the e-mails. *Warshak* at 464–65. Similarly, a cell phone company would not, as a matter of course, identify the location of a customer. As such, a cell-phone user maintains a reasonable expectation of privacy about his location.

7. For the sake of this example, "location" is intended to mean either a private or otherwise not open and obvious (e.g. a highway) public location.

leaving a location, is nonsensical. For instance, someone could plan to be at a location where completely legal activities are to occur, however, wish to keep his prospective appearance at that location secret for whatever his own reasons may be. That future expectation of privacy is almost universally held to be within the confines of the probable cause standard. Accordingly, his current attendance at that location is also held to be within the auspices of the probable cause standard. Why then, when he leaves the establishment, does his expectation of privacy vanish? It would be nonsensical to think that revelation of a location that he wished to keep secret up to and during his attendance would suddenly become appropriate simply because the activity is over and he has left the location. *See, e.g., Judge Kaplan,* 460 F.Supp.2d at 462 (suggesting that an individual may not "abandon[ ] any legitimate expectation of privacy in his or her location by carrying a cell phone that signals its presence in the network to the service provider. . . . [If the Government] used cell site information to surveil a target in a private home that could not be observed from public spaces [it may violate *Karo* ].").

The Government routinely argues that historical cell site information does not provide a "real time" location of the subject cell phone. *See, e.g., Judge Lee,* 2006 WL 1876847, at *3 (dismissing the Government's distinction between cell site information through separate requests for "real time" and "historical" location informa-

tion); *see also Judge Feldman,* 415 F.Supp.2d at 214. This Court, however, does not find the above argument convincing on not only legal principles, but also on common sense. In reality, the Government is seeking the issuance of an order that would technically permit the Government access to cell site information as early as one second prior to the Court's issuance of the order. While one second may be hyperbole, one day is more than realistic.

For example, the Government may apply for an order permitting disclosure of cell site information for twenty-one days prior to the issuance of the order. If granted, say on March 2, the Government, upon immediate issuance of the order, would be permitted access to records for March 1. Taken a bit further, if the court issued its order on March 2 at 4:00 p.m., the Government, arguably, could at that moment technically have access to cell site information from 3:30 p.m. on March 2.[8]

While the scenarios imagined are just that, it is unrealistic to believe that in the explosive world of technological advancement, the Government would not some day (if not now) be able to receive a signed order at 4:00 p.m., e-mail or fax the order to a telecommunication service provider by 4:05 p.m., and receive a cell phone's "historical" cell site information from 3:59 p.m., dramatically narrowing if not pinpointing a location.[9] If this example is not *de jure* "real time" tracking, it is certainly *de facto* "real time" tracking. As such,

**8.** The technical application of whether an order encompassing "twenty-one days prior" actually includes the date of issue or begins at 11:59 p.m. of the preceding day is irrelevant for the illustrative purpose of the example. Seeing that most of these scenarios appear before judges on emergency criminal duty, it would not at all be a surprise that a cunning prosecutor knock on a judge's door at 12:01

a.m. to have an order signed for the prior twenty-one days, if not solely to be able to access cell site information from the prior day at 11:59 p.m.

**9.** *See, e.g., Judge Bredar,* 416 F.Supp.2d 390, 392 n. 4 (providing an example of how Government tracking may work in reality on a prospective basis).

how can there be a different standard when the same result ensues? Consistent with Congress' mandate in CALEA, an individual's location both before and after the issuance of a court ordered disclosure of information, are logically identical for the purpose of probable cause protection. *See Judge Orenstein*, 396 F.Supp.2d at 323. (recognizing there is no reason to treat cell phone tracking any different than other forms of tracking which "routinely require probable cause"); *Judge Lee*, 2006 WL 1876847, at *4 (noting "Congress' intent[ion] to protect cell site location information from utilization as a tracking tool absent probable cause under the Fourth Amendment"). Accordingly, this Court can not see a material difference in the Government's ability to track the location of an individual in "real time" or on a prospective basis and to track his location historically.

### *CONCLUSION*

The Government's attempt to obtain historical cell site information upon a demonstration of the specific and articulable facts standard of 18 U.S.C. § 2703(d) is unavailing. Further, while other District Courts have peripherally addressed the issue, this Court respectfully disagrees with those who would apply a showing of less than probable cause for historic cell site information. Through its enactment of CALEA, Congress unequivocally expressed its intention to require a showing of probable cause before disclosure of the physical location of an individual (obtained through the use of a track device) is allowed. Further, as detailed by way of example above, historic cell site information effectively acts as a "real time" tracking device, as contemplated by the broad definition of 18 U.S.C. § 3117(b).

Judge Smith observed of 18 U.S.C. § 3117(b) that "the definition is striking for its breadth [covering] a device … even though it may not have been intended or designed to track movement; it is enough if the device merely 'permits tracking.'" *Judge Smith*, 396 F.Supp.2d at 753. This Court sees a distinction without a difference between a method of tracking someone in the future and tracking them in the immediate past.

Accordingly, absent probably cause, this Court DENIES the Government's applications to the extent that they seek historic cell site information pursuant to 18 U.S.C. § 2703(d).

SO ORDERED.